# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

SHANNON CHARLES FERGUSON  CIVIL ACTION NO. 6:17-CV-26
  LA. DOC #214807
VS.  SECTION P

  JUDGE ELIZABETH E. FOOTE

BURL CAIN, ET AL  MAGISTRATE PATRICK J. HANNA

## REPORT AND RECOMMENDATION

*Pro se* petitioner Shannon Charles Ferguson, a prisoner in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on December 16, 2016, in the Middle District of Louisiana [Rec. Doc. 1].  The matter was transferred to the Western District of Louisiana on January 9, 2017. [Rec. Doc. 2]  Petitioner attacks his 2014 conviction for possession of a Schedule II controlled dangerous substance (cocaine), in violation of La. R.S. 40:967(C)(2), as well as the habitual offender adjudication and subsequent sixty year sentence imposed thereon by the 16th Judicial District Court, St. Mary Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Procedural Background*

Petitioner, Shannon Charles Ferguson, was charged by bill of information with possession of a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967(C)(2) (count 1) and simple battery, a violation of La. R.S. 14:35 (count 2). He pled

not guilty and, following three *Faretta* hearings, was allowed to represent himself, with the assistance of standby counsel.   *See State of Louisiana v. Ferguson*, 2015-0427 (La. App. 1 Cir. 9/18/15), 181 So.3d 120; Rec. Doc. 6-2, pp. 7-35.  Following trial, Ferguson was found guilty as charged on count 1 by a unanimous jury[1].  *Id.*  A motion for new trial was filed, but denied by the trial court and petitioner was sentenced to imprisonment at hard labor for five years and fined $5,000.00.  *Id.*

An amended habitual offender bill of information was filed by the State, alleging Ferguson to be a sixth-felony habitual offender and, following a hearing, the defendant was adjudicated a fifth-felony habitual offender.  *Id.*  His earlier sentence was vacated, and he was sentenced to serve sixty years at hard labor without the benefit of parole, probation, or suspension of sentence. A "Motion to Reconsider Multiple Offender Ruling" was filed, but denied by the trial court for lack of jurisdiction due to the fact that the trial court granted the defendant's motion for appeal. *Id.*

Ferguson filed a direct appeal in the First Circuit Court of Appeals, arguing the following counseled and pro se assignments of error: (1) insufficient evidence to convict; (2) trial judge erred in allowing him to represent himself; (3) disposal of evidence deprived him of his right to present a defense; (4) improper habitual offender adjudication; (5) excessive sentence; (6) trial court erred in dismissing his "Motion to Reconsider Multiple Offender Ruling" for lack of jurisdiction; (7) trial court erred in imposing the habitual offender

---

[1]Count 2 was dismissed prior to trial pursuant to an amended bill of information.

2

enhanced sentence without the benefit of parole; (8) violation of the trial court's duties; (9) falsified minute entry related to a August 21, 2013 hearing; (10) bill of information amended without his knowledge; (11) assignment of standby counsel; (12) *Brady* error regarding destruction of pocket lint and filed test kit.  On September 18, 2015, the First Circuit affirmed the conviction and habitual offender adjudication, but amend the sentence by removing the restriction on parole eligibility, and affirmed as amended.  *Id.*

Petitioner applied for writs of certiorari in the Louisiana Supreme Court and on November 18, 2016, his writ application was denied without comments.  *State of Louisiana v. Ferguson*, 2016 WL 7030757 (La. 2016).  He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 2, ¶9(h).]

Petitioner raises nine claims in the instant petition: (1) claims related to the disposal of evidence; (2) the bill of information was amended without his knowledge; (3) every ruling on the record during discovery and inspection and production of documents was in error; (4) Brady violations; (5) Trial Court erred in making certain evidentiary rulings; (6) improper habitual offender adjudication; (7) additional claims related to improper habitual offender adjudication; (8) 'collateral attack on the arresting charge that was dismissed by the state;" and (9) "miscarriage of justice- no evidence."

### Factual Background

On October 4, 2011, petitioner was arrested by Officer Seth Dantin of the Franklin Police Department, who was dispatched in response to a battery occurring near the

courthouse in Franklin, Louisiana. Upon arrival at the scene, Officer Dantin observed the defendant being detained by St. Mary Parish Sheriff's deputies. Officer Dantin then spoke with nearby witnesses, who described seeing the defendant approach a vehicle and punch the driver in the nose.  The defendant was arrested and transported to the Franklin police station, where, after being handcuffed, was searched by Officer Dantin in the police station's booking room.  Along with a wallet, screwdriver, loose coins, and a bag of tobacco, Officer Dantin also located a "crack rock" on the defendant. Specifically, Officer Dantin testified that he initially discovered the cocaine after feeling something "hard" in the defendant's front right pocket. Officer Dantin conducted a field test on the substance, which returned positive for cocaine. The substance was later submitted to the Acadiana Crime Lab where an expert in the field of forensic chemistry, tested the substance, and verified it to be a 30–milligram rock of cocaine.

### *Law and Analysis*

## I.  Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## II. Petitioner's Claims

### A.    Claim 1- Disposal of Evidence

Petitioner begins his first argument as to Claim 1 alleging that the state did not timely disclose that certain evidence, specifically the lint that was in his pocket along with the crack cocaine, was not preserved and that his defense at trial was prejudiced. He then moves into an argument regarding destruction of the lint. This Court will treat this claim as the Louisiana First Circuit Court of Appeal did - a failure to preserve evidence claim, as opposed to a timely disclosure claim.

At the time of his arrest for battery, petitioner was searched and a rock of crack cocaine was found in his pocket, along with some lint. The police seized the cocaine, but not the lint, which they discarded, thereby preventing petitioner from being able to test the lint for his DNA. He now argues that the police violated his Due Process rights by failing to seize and preserve the lint.

The failure of law enforcement officers to preserve evidence, the exculpatory value of which is unknown, does not violate the Due Process Clause generally, absent a showing that the officers acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 57-58 (1988). This is true even if the defendant made a specific request for production of the evidence prior to its destruction. *Illinois v. Fisher,* 540 U.S. 544, 548 (2004) (per curiam). The Louisiana First Circuit Court of Appeal, after a review of the record and an extensive analysis of the facts, found that the defendant did not establish any bad faith on the part of Office Dantin or the State concerning the disposal of the pocket lint. Additionally, the cocaine, which provided the factual basis for supporting the petitioner's charge, was maintained and tested.

6

Petitioner further contends that the lint could have been exculpatory evidence if DNA analysis showed that his DNA was not on the lint.  The United States Supreme Court has held that the State has no constitutional duty to perform any particular test on any piece of evidence which may be recovered from a crime scene.  *Youngblood,* 488 U.S. at 59.  To the contrary, the Court "strongly disagree[d]" with the suggestion that "Due Process is violated when the police fail to use a particular investigatory tool...." *Id.*  Rather, in such cases, "the defendant is free to argue to the finder of fact that a [particular] test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests." *Id.*

Finally, petitioner has failed to demonstrate that any prejudice ensued from the prosecution's failure to perform DNA tests on the lint, or that the missing lint was material to the defense.  *See Strickler v. Greene,* 527 U.S. 263, 281-282, 290-291 (1999).  Evidence is material if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  *East v. Scott*, 55 F.3d 996, 1002 (5th Cir. 1995)*.*  "[A] 'reasonable probability' of a different result is shown when the non-disclosure could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict."  *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996), *cert. denied*, 117 S.Ct. 519 (1996).  However, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."  *Rector v. Johnson*,

120 F.3d 551, 562 (5th Cir. 1997).  Finally, *Brady* "does not place any burden upon the Government to conduct a defendant's investigation or assist in the presentation of the defense's case." *East*, 55 F.3d at 1004.

On appeal, the First Circuit noted that in *California v. Trombetta*, 467 U.S. 479, 488 (1984), the court stated that:

> Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [...] evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*State v. Ferguson*, 2015-0427 (La. App. 1st Cir. 9/18/15), 181 So3d. 120, 134, (internal citations omitted.)

Applying *Trombetta* to Ferguson's case, the First Circuit found that the failure to preserve the lint did not violate due process, stating:

> After a review of the record, we find that the defendant did not establish any bad faith on the part of Officer Dantin or the State concerning the disposal of the pocket lint. Additionally, the cocaine, which provides the factual basis for supporting the defendant's charge, was maintained and tested. While it is true that Officer Dantin did discard the lint, the defendant has not shown that it had apparent exculpatory value. Also, this disposal allowed the defendant to criticize the investigation of the crime and cast doubt on Officer Dantin's handling of the evidence. Moreover, in his closing argument, the defendant presented his hypothesis of innocence to the jury—that the lint-covered cocaine was on the booking room floor prior to the defendant's search and was picked up when the coins fell out of the defendant's pockets. This hypothesis was rejected unanimously by the jury.

*Id*. (internal citations omitted.)

For the above reasons, petitioner's request for habeas corpus relief with respect to this claim is without merit.

## B.      Claim 2 - Amending of Bill of Information

Petitioner's second claim is that the trial court improperly amended the bill of information on the first day of trial without leave of Court or notice to the defense.

Claim 2 is a Louisiana state law claim.  Federal law is well settled that claims of error in the application of state law do not assert a claim cognizable in federal habeas proceedings. *Swarthout v. Cooke*, __U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law) (*quoting Estelle v. McGuire*, 502 U.S. 62, 67 (1991)); *Engle v. Isaac*, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge ... [the application of state] law, they allege no deprivation of federal rights and may not obtain habeas relief."); *Young v. Dretke*, 356 F.3d 616, 628 (5th Cir. 2004.  In the course of reviewing state criminal proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007); *Skillern v. Estelle*, 720 F.2d 839, 852 (5th Cir. 1983).

Louisiana Code of Criminal Procedure article 489 provides, in pertinent part:

If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time.

When an indictment is amended, unless the defendant moves for a continuance on the ground that he is prejudiced thereby, and requires additional time to prepare his defense, he

cannot later complain that he was prejudiced by the amendment. *See State v. Williams*, 347 So.2d 184, 186 (La.1977); *State v. Issac*, 527 So.2d 1045, 1049 (La.App. 5th Cir.), writ denied, 532 So.2d 175 (La.1988). As the First Circuit noted on appeal, "the burden is on the defendant to establish that an amendment to an information or indictment has prejudiced his defense so as to necessitate granting a continuance. *State v. Davis*, 385 So.2d 193, 197–98 (La.1980), *cert. denied, Penns v. Louisiana*, 529 U.S. 1134, 120 S.Ct. 2014, 146 L.Ed.2d 963 (2000)." *State v. Ferguson,* 181 So.3d at 141. The purpose of a continuance is to prevent prejudicial surprise to the defendant. *Davis*, 385 So.2d at 197.

Other than stating that the amendment was made at the last minute, the defendant has failed to show or allege how the amendment prejudiced his defense. *See State v. Gilbert,* 99–315 (La. App. 5th Cir.4/25/00), 760 So.2d 536, 539.

Petitioner's claim that the trial court misapplied Louisiana law with respect to the amended bill of rights is a state law issue that does not warrant federal habeas corpus relief and, as such, this claim must be denied.

Furthermore, addressing the merits, the First Circuit relied on the record, which reflects that the petitioner did not move for a continuance or otherwise object when the bill of information was amended. Thus, there was no showing, or even an attempt to show, that the defendant was prejudiced by the amended bill of information. See *Issac*, 527 So.2d at 1049. Additionally, contrary to the petitioner's claim that he did not receive a copy of the amended bill of information, the First Circuit noted that the minute entry from February 4,

2014, the morning of trial, reflects the defendant was provided a copy of the amended bill of information. Moreover, the amended bill of information actually benefitted the defendant, as it removed the charge of simple battery. Therefore, the petitioner was not prejudiced by, and the trial court did not err in allowing, the amended bill of information.

### C.    Claim 3 - Untimely Disclosure of Evidence and Production of Documents

In claiming that his due process rights were violated by untimely disclosure, petitioner asserts that "every ruling on the record denying the defendant's discovery and inspection and production of documents is plain error." [Rec. Doc. 6, p. 17]   Petitioner does not specify what evidence or documents were not disclosed timely or what rulings were made in error. To the extent petitioner is referencing the disposal of the lint, this issue is discussed above in Section II, Part A.

### D.    Claim 4 - *Brady* Violation

Petitioner claims that his due process rights were violated due to numerous *Brady* violations. He asserts that there are "about 12 different arguments under this heading," including "non-disclosure, untimely disclosure, deliberate withholding of evidence, court order disclosure that was non comply (sic) with, you have the state admitting to a motion entitled Discovery and inspection *Brady* material where the defense notified the court and the state I need those things and if the defense does not receive them its reversible error." [Rec. Doc. 6, p. 19]

In *Brady v. Maryland*, 373 U.S. 83 (1963),  the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. The duty to disclose this kind of evidence exists even though there has been no request by the defendant. *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (*citing United States v. Agurs*, 427 U.S. 97, 107 (1976)). The prosecution's duty to disclose includes both exculpatory and impeachment evidence. *Strickler*, 527 U.S. at 280 (*citing United States v. Bagley*, 473 U.S. 667, 676 (1985)).

*Brady* claims involve "the discovery after trial of information which had been known to the prosecution but unknown to the defense." *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994) (*quoting Agurs*, 427 U.S. at 103).  Thus, "when information is fully available to a defendant at the time of trial and his only reason for not obtaining and presenting the evidence to the Court is his lack of reasonable diligence, the defendant has no *Brady* claim." *United States v. Brown*, 628 F.2d 471, 473 (5th Cir. 1980); *see Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002) (holding that *Brady* does not require prosecutors to furnish a defendant with exculpatory evidence if that evidence is fully available to the defendant through an exercise of reasonable diligence); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997)(holding that the State has no duty to lead the defense toward potentially exculpatory evidence if the defendant possesses the evidence or can discover it through due

diligence). *Brady* also does not place any burden upon the prosecution to conduct a defendant's investigation or assist in the presentation of the defense's case. *United States v. Marrero*, 904 F.2d 251, 261 (5th Cir. 1990) (*citations omitted*).

To prove a *Brady* violation, a defendant must establish that the evidence is favorable to the accused because it is exculpatory or impeachment, that the evidence was suppressed by the State, and that prejudice resulted from the non-disclosure. *Banks v. Dretke*, 540 U.S. 668, 691 (2004) (*citing Strickler*, 527 U.S. at 281-82). However, "[t]he prosecution is not obliged to disclose impeachment evidence unless the evidence is 'favorable to the accused.'" *East v. Scott*, 55 F.3d 996, 1005 (5th Cir. 1995).

The First Circuit in this matter addressed this claim as it relates to the disclosure of the lint, stating:

> The defendant's argument is that the information regarding the destruction of the pocket lint and field test should have been made known to him prior to the morning of trial. However, we note that the defendant did not first request information concerning the pocket lint and field test kit until the day before the start of trial. Additionally, *Brady* only requires disclosure of evidence which presents a 'reasonable probability that, had the evidence been disclosed to the defense, the result of the outcome would have been different." *Bagley*, 473 U.S. at 682, 105 S.Ct. At 3383. Here, the defendant was found with a 30-milligram cocaine rock in his pocket, which was sufficient to establish all of the elements of the crime of possession of a Schedule II controlled dangerous substance. We find that whether or not the defendant would have been made aware of the destruction of the pocket lint and field test kit, this would not 'undermine confidence in the outcome of trial.'

*State v. Ferguson*, 181 So.3d at 142.

13

The First Circuit drew attention to *Bagley's* "reasonable probability," noting that the "question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence, he received a fair trial, which is understood as a trial resulting in a verdict worthy of confidence." *Id.*   A "reasonable probability" of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id., citing Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *Bagley*, 473 U.S. at 678; *Smith v. Cain*, __ U.S. __, 132 S.Ct. 627, 630 (2012).  The First Circuit ultimately held: that "whether or not the defendant would have been made aware of the destruction of the pocket lint and field test kit, this would not 'undermine confidence in the outcome of the trial.'" *Id.*

As the appellate court's denial of relief was not contrary to or an unreasonable application of Supreme Court law and, petitioner is not entitled to relief on this claim.

### E.    Claim 5 - Trial Court's Evidentiary Rulings

In Claim 5, petitioner alleges errors in three evidentiary rulings by the state court, including denial of a motion to suppress.  Review of petitioner's filings in the Louisiana state courts on direct appeal reveal that petitioner did not raise claims relating to these evidentiary rulings on direct appeal.   Under these circumstances, these claims were never properly exhausted in the Louisiana state courts and are now procedurally defaulted.

Furthermore, the State's assertion that these claims are barred under the principles announced by the United States Supreme Court in *Stone v. Powell*, 428 U.S. 465 (1976) is

14

well taken.  Under *Stone*, federal *habeas* review of Fourth Amendment claims is precluded "when the state has provided an opportunity for full and fair litigation of the claim."  *Id.,* at 494.  All that is required is an "opportunity to present a Fourth Amendment claim to the state trial and appellate courts, whether or not that opportunity is exercised or proves successful . . . ."  *Smith v. Maggio*, 664 F.2d 109, 111 (5th Cir. 1981).  Moreover, all that is required is an "opportunity" to litigate, not actual litigation.  *Caver v. Alabama,* 577 F.2d 1188, 1192 (5th Cir. 1978).  Thus, the Fifth Circuit has held that "in the absence of allegations that the processes provided by a state to fully and fairly litigate fourth amendment claims are routinely or systematically applied in such a way as to prevent the actual litigation of fourth amendment claims on their merits," *Stone* forecloses review. *Moreno v. Dretke,* 450 F.3d 158, 167 (5th Cir. 2006) *citing Williams v. Brown*, 609 F.2d 216, 220 (5th Cir.1980).

Petitioner presents no argument that Louisiana courts systematically and erroneously prevent adjudication of Fourth Amendment claims.  To the contrary, there are numerous decisions by the Louisiana state courts addressing such claims pursuant to the state's procedural rules for asserting such claims.  Ferguson was given the opportunity to present his Fourth Amendment claims, in accordance with the state's procedural mechanism, to both the state trial and appellate courts.  The trial court held a hearing on petitioner's motion to suppress and denied same.  This decision cannot now be considered in the context of a federal habeas proceeding and should be dismissed. Accordingly, *Stone* bars petitioner's Fourth Amendment claims.

### F.    Claims 6 & 7 - Improper Habitual Offender Adjudication

Petitioner alleges that adjudicating him as a fifth felony habitual offender was an error, because when he entered a plea in his prior felony convictions, the state agreed not to habitually bill him in the future for any offenses he may commit.

On August 28, 2014, a habitual offender hearing was held. [Rec. Doc. 1-1, pp. 79-117] Petitioner was found to be a fifth felony habitual offender and sentenced to sixty years at hard labor. Petitioner did not testify at the hearing, so there is no evidence in the record that he interpreted the state's offers at the time of the prior pleas as offers which included an agreement that there would be no habitual offender charge for future offenses.  On appeal, petitioner argued that the "vague understanding of the phrase 'no multi-bill,' as used in some of the predicate guilty pleas, should preclude their use as a basis for his instant habitual offender adjudication." [Rec. Doc. 6-2, p. 20]

In *State v. Shelton*, 621 So.2d 769 (La. 1993), the Louisiana Supreme Court reviewed the jurisprudence concerning the burden of proof in habitual offender proceedings, and found it  proper to assign the burden of proof to a defendant who contests the validity of his guilty plea.   In *State v. Winfrey*, 97-427 (La.App. 5 Cir. 10/28/97), 703 So.2d 63, 80, *writ denied* 98-0264 (La. 6/19/98), 719 So.2d 481, the Louisiana Fifth Circuit Court of Appeal summarized the procedure for determining the burden of proof in a multiple offender hearing:

> If the defendant denies the multiple offender allegations then the burden is on the State to prove (1) the existence of a prior guilty plea, and (2) that the

16

defendant was represented by counsel when the plea was taken. Once the State proves those two things, the burden then shifts to the defendant to produce affirmative evidence showing (1) an infringement of his rights, or (2) a procedural irregularity in the taking of the plea. Only if the defendant meets that burden of proof does the burden shift back to the State to prove the constitutionality of the guilty plea. In doing so, the State must produce either a "perfect" transcript of the *Boykin* colloquy between the defendant and the judge or any combination of (1) a guilty plea form, (2) a minute entry, or (3) an "imperfect" transcript. If anything less than a "perfect" transcript is presented, the trial court must weigh the evidence submitted by the defendant and the State to determine whether the State met its burden of proof that defendant's prior guilty plea was informed and voluntary.

Concerning the four predicate offenses, the district court noted that the State introduced certified copies of the bills of information, guilty plea minute entries, and "perfect" plea colloquy transcripts between the petitioner and the trial court, reflecting that he was represented by counsel, discussed the pleas with counsel, was advised of and waived his *Boykin* rights, and was not under the influence of threats or duress while offering his pleas. The district court found that the State carried its burden of proving the existence of the petitioner's four predicate guilty pleas, that they were freely and voluntarily given and that the defendant was represented by counsel. The district court held that the petitioner offered no evidence showing an infringement of his rights or a procedural irregularity in the taking of the pleas and, accordingly, the State proved the defendant's predicate convictions and the district court correctly adjudicated him a fifth felony habitual offender.

*State v. Kittlin*, 97-92 (La. App. 3 Cir. 6/4/97), 695 So.2d 1137, addresses the issue of the no future habitual bill issue presented in this matter. In *Kittlin*, the court discussed a

plea where the State agreed that the plea would not be used in the future to habitually bill the defendant and remanded the case for a hearing on whether the State made such a promise and, if no promise, whether the defendant "justifiably believed" that it was the plea agreement. The *Kittlin* court stated at the hearing on remand:

> If the evidence presented supports a finding that the State promised it would not enhance the Defendant's present conviction by filing a habitual offender bill and that the Defendant's guilty plea was induced in part by this promise, the plea bargain must be enforced. Likewise, if the evidence supports a finding that there was no such agreement, but the Defendant justifiably believed there was and pled guilty in part because of that belief, the guilty plea was not knowingly and voluntarily entered and must be set aside. Moreover, if after an evidentiary hearing it is determined that the terms of the plea bargain reflects an agreement by the State 'that it would not use the attempted possession of cocaine conviction as a predicate for future habitual offender adjudications,' this plea would be considered invalid as it is against public policy as it could be construed as an encouragement of future criminal activity. While the State clearly can promise a defendant that it will not enhance the defendant's present conviction by filing a habitual offender bill, it cannot enter into a plea agreement compromising its ability to prosecute future criminal activity. An agreement of this nature is equivalent to a 'down-payment' on a future sentence and might well encourage future criminal activity instead of deterring such activity. Public policy considerations do not allow us to condone a plea bargain which makes 'concessions in advance' of future criminal activity.

*Kittlin*, 695 So.2d at 1141 (internal citations omitted).

The First Circuit, distinguishing *Kittlin* from the present matter, stated:

> The instant case and *Kittlin* are factually distinguishable. In *Kittlin*, the issue was whether the prosecutor agreed not to file a habitual offender bill of information regarding the underlying offense in exchange for the plea agreement. Here, the defendant argues that language and discussions from previous plea agreements, some over twenty years earlier, containing "no multi-bill" language, prohibit their use as predicate convictions in the instant offense, a proposition expressly rejected by *Kittlin*. We agree with the court's holding in *Kittlin*, and find any agreement of this nature violates public policy

18

> as it encourages, rather than deters, future criminal activity. As such, in the instant case, the four predicate guilty pleas used by the State to support the defendant's adjudication were valid, and the trial court correctly adjudicated the defendant a fifth-felony habitual offender. Therefore, the defendant's counseled and pro se assignments of error are without merit.

*Ferguson*, 181 So.3d at 136.

The trial court did not err in finding that the four predicate guilty pleas used by the State to support petitioner's adjudication were valid and that the trial court correctly adjudicated him a fifth-felony habitual offender. Accordingly, this claim is without merit.

### G.    Claim 8 - Dismissal of Simply Battery Charge/Amending Bill of Information

The Court addressed the merits of this claim in Section II, Part B, above.

### H.    Claim 9 -Miscarriage of Justice - No Evidence

Petitioner challenges his conviction based on the sufficiency of the evidence presented at trial. More specifically, he argues that the cocaine found in the corner of his pocket, wrapped up in pocket lint, was found pursuant to the search conducted following his arrest for simple battery and, because the battery charges were ultimately dropped, it was inappropriate to use that evidence at trial.

Petitioner seems to stray from the original arguments made on appeal with respect to this claim. To the extent petitioner raises issues that were not raised on appeal, and therefore not exhausted, those issues are procedurally defaulted.

To the extent he raises the same issues related to the sufficiency of the evidence as were raised on appeal, the Louisiana First Circuit Court of Appeal addressed the claim that

the cocaine found in his pocket by Officer Dantin did not belong to him and the argument that "[t]he little piece of crack, as the officer [described] it, could have come off a cigarette pack, a debit card, been scooped off a counter of a place of business with his change, been on a soda can or bottle [and then] transferred to the defendant's hand." [Rec. Doc. 6-2, p. 10]

In rejecting petitioner's claim on direct appeal the First Circuit, analyzed the evidence presented at trial, and found that the evidence was sufficient to support petitioner's conviction under the federal standard set forth by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979), as well as Louisiana's rule as to circumstantial evidence, i.e., "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438; *State v. Millien*, 2002-1006 (La. App. 1st Cir. 2/14/03), 845 So.2d 506, 508-09.

Based on its analysis of the evidence, the First Circuit expressly found sufficient evidence to support petitioner's conviction as follows:

> During Office Dantin's testimony, he stated that when he completed his arrest report , he mistakenly indicated the cocaine was located on the inside of the defendant's left pocket. However, in anticipation of his trial testimony, Officer Dantin reviewed the booking room video, and observed that, in fact, the cocaine was located inside the defendant's right pocket. The defendant cross-examined Officer Dantin on this point and further argued it to the jury during his closing argument. Regardless of which pocket the drugs were located in, Officer Dantin responded, 'yes' when asked by the State at the trial whether he was 'absolutely certain' he retrieved the cocaine out of the defendant's pocket. Additionally, as discussed above, Amanda Hebert, an expert in the field of forensic chemistry with Acadiana Crime Lab, testified the retrieved material was cocaine.

> The jury reasonably rejected the hypothesis of innocence presented by the defendant, i.e., that Officer Dantin's mistake regarding the location of the cocaine indicated that he somehow planted the drugs on the defendant.

*State v. Ferguson*, 181 So.3d 130.

The standard for reviewing the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the government, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979) (emphasis added); *Gibson v. Collins*, 947 F.2d 780, 781 (5th Cir. 1991) *quoting Jackson*, 443 U.S. at 319. Thus, a federal court "may find the evidence sufficient to support a conviction even though the facts also support one or more reasonable hypothesis consistent with the defendant's claim of innocence." *Gibson*, 947 F.2d at 783. Stated differently, an applicant is entitled to *habeas corpus* relief only if it is found that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id. citing Jackson,* 443 U.S. at 324; *West v. Johnson,* 92 F.3d 1385, 1393 (5th Cir. 1996) *citing Jackson*, 443 U.S. at 322-26.

This Court applies the *Jackson* standard "giving great weight to the state court's determination." *Gibson*, 947 F.2d at 782, 786; *Porretto v. Stalder*, 834 F.2d 461, 467 (5th Cir. 1987). Both direct and circumstantial evidence can contribute to the sufficiency of the evidence underlying the conviction. *Schrader v. Whitley*, 904 F.2d 282, 287 (5th Cir. 1990) *citing Jackson*, 443 U.S. at 319, 324-25; *Pate v. Wainwright*, 607 F.2d 669, 670 (5th Cir. 1979) (*per curiam*). The fact that most of the evidence against a defendant was circumstantial

does not change the standard of review. *United States v. Zuniga-Salinas*, 945 F.2d 1302, 1305 (5ᵗʰ Cir. 1991).

Review of the sufficiency of the evidence does not include review of the weight of the evidence or the credibility of the witnesses, as those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed.Appx. 442, 443 (5ᵗʰ Cir. 2004) *citing United States v. Garcia*, 995 F.2d 556, 561 (5ᵗʰ Cir. 1993); *Garcia*, 995 F.2d at 561 *citing United States v. Greenwood*, 974 F.2d 1449, 1458 (5ᵗʰ Cir. 1992); *Green v. Johnson,* 160 F.3d 1029, 1047 (5ᵗʰ Cir. 1998); *Jackson,* 443 U.S. at 319 (noting that it is the jury's responsibility to "resolve conflicts in testimony, to weigh evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Accordingly, all credibility choices and conflicting inferences are to be resolved in favor of the verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5ᵗʰ Cir. 2005) *citing Cyprian*, 197 F.3d at 740. The reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder. *Alexander v. McCotter*, 775 F.2d 595, 598 (5ᵗʰ Cir. 1985).

Under the appropriate standard of review, this court cannot find that the appellate court's decision was contrary to, or an unreasonable application of, federal law, nor that the appellate court's factual determinations were unreasonable in light of the State court record. Accordingly, the First Circuit's decision cannot be disturbed and petitioner's sufficiency of the evidence claim does not warrant federal *habeas* relief.

## Conclusion and Recommendation

For the foregoing reasons,

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a

memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2).  A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

     In Chambers, Lafayette, Louisiana December 5, 2017.

                              **PATRICK J. HANNA**
                **UNITED STATES MAGISTRATE JUDGE**